# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

ESSEX INSURANCE COMPANY,   )
                           )
          Plaintiff,       )
vs.                        )   NO. CIV-13-0233-HE
                           )
WAY JOSE ENTERPRISES, LLC, )
d/b/a THE COLLEGE BAR,     )
JENNIFER LAWMASTER,        )
and MATHEW MacALLISTER,    )
                           )
          Defendants.      )

## ORDER

Essex Insurance Company ("Essex") filed this declaratory judgment action against Way Jose Enterprises d/b/a The College Bar, Jennifer Lawmaster, and Mathew MacAllister, seeking a declaration of its obligations under an insurance policy it issued to Way Jose Enterprises ("TCB" hereafter). The dispute arises out of a state court lawsuit filed by Lawmaster against MacAllister and TCB to recover for injuries she allegedly sustained as the result of MacAllister and TCB's tortious acts. Essex is defending TCB in the state case under a reservation of rights, but seeks here a determination that it is not obligated to defend or indemnify TCB in that case. Essex argues any potential liability of TCB in the state case is outside the scope of the policy coverage, because of various definitions and exclusions in the policy.

Essex has moved for summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

1

judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013). The Court has viewed the evidence and any reasonable inferences that might be drawn from it in the light most favorable to defendants, the nonmoving parties, and concludes that plaintiff's motion should be granted.[1]

## Background

The underlying state lawsuit arises out of an incident that occurred in Stillwater, Oklahoma in October 2011. According to the state court petition, Lawmaster and MacAllister celebrated homecoming at TCB, a restaurant and bar located in Stillwater. They consumed alcohol to the extent that both were noticeably intoxicated by the evening of October 29 (petition [Doc. #1-1], paras. 15, 16 & 19). The petition alleges that, at some point in the evening, Lawmaster was drugged. It further alleges that, during the early morning hours of October 30, Lawmaster and MacAllister left TCB. The petition alleges that the drugging of Lawmaster caused her to lose consciousness and the ability to remember the events that happened after she left TCB. However, the petition alleges she was later found "abandoned, assaulted, and horrifically injured." (petition, para. 25). The petition alleges

---

[1]*Defendants Lawmaster and MacAllister each filed a response to Essex's initial complaint, [Doc. Nos. 19, 22], but neither party filed a response to Essex's motion for summary judgment.*

2

that she was either assaulted by MacAllister, or abandoned by MacAllister and sustained injuries from an unidentified source. Lawmaster alleges TCB breached a number of duties owed to her, including to provide for her safety, to police and prevent activities which would lead to an unreasonable risk of harm, to come to the aid of patrons, and to train the employees in regard to serving alcohol to intoxicated individuals. Essex contends that the insurance policy does not cover any of these potential theories or sources of liability.

The existence and language of the policy are not disputed, nor is there is there any dispute that the policy was in force at the time of the incident alleged in the state case. Essex relies on four coverage and exclusion provisions here. It argues that the policy covered only accidental, rather than intentional, acts. It relies on specific exclusions directed to injuries arising out of assault and battery and of liquor liability. Finally, it argues the policy does not provide coverage for punitive damages.

### Analysis

The question in this case is whether, under the terms of the insurance policy, Essex has a duty to defend or indemnify TCB. Oklahoma law applies.[2]

The pertinent legal principles are well established. Under Oklahoma law, insurance contracts are interpreted "in accordance with principles applicable to all contracts." Mansur v. PFL Life Ins. Co.,589 F.3d 1315, 1319 (10th Cir. 2009). The contract is "construed according to the plain meaning of its language," and, if unambiguous, the court "interprets

---

[2]Both parties treat the various legal issues as ones of Oklahoma law.

the contract as a matter of law." *Id.* "When an insurance contract is susceptible of two meanings . . . words of inclusion are liberally construed in favor of the insured and words of exclusion strictly construed against the insurer." Phillips v. Estate of Greenfield, 859 P.2d 1101, 1104 (Okla. 1993). "I[t] is the expectations of the insured that control" when "the terms of the contract are unclear, or when the contract is susceptible to two reasonable interpretations." Western World Ins. Co. v. Markel American Ins. Co., 677 F.3d 1266, 1271 (10th Cir. 2012); *accord* Mansur, 589 F.3d at 1319 (Because "[a]n insurance policy is considered a contract of adhesion in Oklahoma," if the contract is ambiguous, it is "construed in favor of the insured.").

An insurer's obligation under a liability policy "generally contains two basic duties — the duty to defend and the duty to indemnify its insured." First Bank of Turley v. Fid. & Deposit Ins. Co. of Md., 928 P.2d 298, 302-03 (Okla.1996). The insurer's duty to defend is broader than the duty to indemnify, and arises whenever the insurer "ascertains the presence of facts that give rise to *the potential of liability* under the policy." *Id.* at 303 (footnote omitted). "[T]here *need not be a probability of recovery*." *Id.* at 303 n.14. "[T]he insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the *possibility of a recovery* under the policy." *Id.*

The liability provisions of the TCB policy obligate Essex to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies," and "to defend the insured against any 'suit' seeking those damages." [Doc. #1-2, p. 21]. There is also coverage for "bodily injury" if it occurs

4

during the policy period and is caused by an "'occurrence' which takes place in the 'coverage territory.'" *Id.* at 16. "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 29.

Essex argues that, as coverage is confined to injuries caused by an "accident", it cannot be liable for the injuries alleged by Lawmaster. It views those injuries as all due to the intentional acts of MacAllister. Further, Essex argues the exclusion for injuries arising out of assault and battery similarly bars liability to TCB,[3] in light of the allegations that MacAllister assaulted Lawmaster. TCB essentially concedes Essex's argument to the extent Lawmaster's injuries were due to any assault and battery, or other intentional tort, committed by MacAllister.[4] Rather, it argues that Lawmaster's state claims include alternative ones based on MacAllister's alleged negligence in abandoning Lawmaster after they left the bar, i.e. his negligence in failing to protect Lawmaster from whatever other unspecified person or source caused her injuries. TCB then argues Lawmaster's claims against it (TCB) potentially include ones that it was negligent for not protecting her from MacAllister's negligence — described as failure to police the premises, failure to take reasonable steps to protect her, and failure to come to her aid.

That theory strikes the court as a bit of a heavy lift. However, the likelihood of

---

[3]*Under the assault and battery endorsement, coverage is excluded for bodily injury "arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any insured, insured's "employees", patrons or any other person." [Doc #35-2, p. 39].*

[4]*TCB did not respond to plaintiff's argument as to punitive damages being excluded under the policy, thereby conceding that issue as well.*

5

Lawmaster establishing liability in the state case on that theory is not the question here, but rather whether there is <u>potential</u> liability that the Essex policy covers. Notwithstanding that distinction, though, the court concludes the policy terms, in particular the liquor exclusion, preclude liability even for negligence-based torts.

The liquor liability exclusion [Doc. #35-2, p. 40] provides, in pertinent part:

The coverage under this policy does not apply to "bodily injury" . . . or any injury loss or damage arising out of:

. . .

> 4.) Any act or omission by an any <u>insured, any employee of any insured, patrons</u>, members, associates, volunteers or any other persons respects providing or failing to provide transportation, detaining or failing to detain any person, <u>or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol</u>.

This exclusion applies to the entire policy. (Emphasis added.)

Here, there is no dispute that Lawmaster was under the influence of alcohol.[5] Her petition explicitly alleges that. She may also have been, as she alleged, under the influence of other drugs as well, but that does not affect the undisputed fact that she was, and was suspected to be, intoxicated by alcohol. Under the express terms of the liquor exclusion highlighted above, there can be no liability under the policy — once "under the influence of alcohol" is shown — for not caring for her, or supervising her, or any other act of "assuming

---

[5]*Petition, para. 19 [Doc. #1-1, p. 3]: "Lawmaster continued to consume alcoholic beverages that were purchased by MacAllister from [TCB] despite the actions that she and MacAllister displayed <u>and despite their obvious intoxication</u>." (Emphasis added.) The other "actions displayed" included dancing together on the stage and making "a scene." Para. 18.*

or not assuming responsibility" for her. The exclusion extends both to omissions or failures to act by TCB and its employees and to those of MacAllister (a "patron" of the bar). The exclusion thus precludes liability based on any theory of TCB being liable for negligent acts of MacAllister.

The circumstances here are different from those involved in various of the cases relied on by TCB. This is not a situation where the insurer's liability will be determined by whether alcohol sold by it contributed to the tortious acts committed by MacAllister or otherwise contributed to or caused the injuries to Lawmaster. It is also does not matter whether MacAllister's conduct did or did not constitute a supervening cause. Rather, the referenced portion of the exclusion turns on Lawmaster's condition — was she under the influence of alcohol or not? If she was, there is no coverage. In the circumstances existing here, that fact is undisputed. It is not a factual issue yet to be resolved in the state proceeding or otherwise a variable.

In sum, either because of (1) definitions/exclusions excluding liability for TCB exposure based on MacAllister's intentional torts or (2) because of the liquor exclusions impact on potential TCB liability due to its or MacAllister's negligence, Essex is entitled to a declaration that it is not obligated to defend or indemnify TCB in connection with Ms. Lawmaster's claims.

Plaintiff's motion for summary judgment [Doc. Nos. 33 & 35] is **GRANTED**.

**IT IS SO ORDERED**

Dated this 30th day of September, 2013.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE